IN THE

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

_____

NO. 18-4153

UNITED STATES OF AMERICA,

                         Appellee,

vs.

KEITH WAYNE CARVER, JR.,

                         Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA, GREENVILLE DIVISION
THE HONORABLE TIMOTHY M. CAIN, PRESIDING

**REPLY BRIEF FOR APPELLANT**

                        EMILY DECK HARRILL, ESQUIRE
                        ASSISTANT FEDERAL PUBLIC DEFENDER
                        FEDERAL PUBLIC DEFENDER'S OFFICE
                        1901 ASSEMBLY STREET, SUITE 200
                        COLUMBIA, SOUTH CAROLINA 29201
                        TELEPHONE NO. (803) 765-5079
                        **ATTORNEY FOR APPELLANT**

# TABLE OF CONTENTS

**I.    INTRODUCTION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**II.   ARGUMENT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.  *Amount of Loss Incorrectly Calculated.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.  *Number of Victims Incorrectly Determined.* . . . . . . . . . . . . . . . . . . . . . . . 4

    C.  *District Court Erred in Denying Acceptance of Responsibility.* . . . . . . . . 6

**III.  CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**CERTIFICATE OF COMPLIANCE**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**CERTIFICATE OF SERVICE**.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# **TABLE OF AUTHORITIES**

| **CASES** | **Page(s)** |
|---|---|

*United States v. Anderson*, 532 F. App'x 373 (4th Cir. 2013). . . . . . . . . . . . . . . . . . . . 5

*United States v. Burns*, 781 F.3d 688 (4th Cir. 2015).. . . . . . . . . . . . . . . . . . . . . . . 6, 7

*United States v. Carter*, 581 F. App'x 206 (4th Cir. 2014). . . . . . . . . . . . . . . . . . . . 1

*United States v. Diaz–Ibarra*, 522 F.3d 343 (4th Cir. 2008). . . . . . . . . . . . . . . . . . 8

*United States v. Gomez-Jimenez*,
    750 F.3d 370 (4th Cir. 2014), as corrected (Apr. 29, 2014). . . . . . . . . . . . . . . 8

*United States v. Jones*, 557 F. Supp. 2d 630 (E.D. Pa. 2008).. . . . . . . . . . . . . . . . . 2

*United States v. Onyesoh*, 674 F.3d 1157 (9th Cir. 2012). . . . . . . . . . . . . . . . . . 1, 2

*United States v. Otuya*, 720 F.3d 183 (4th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Savillion-Matute*, 636 F.3d 119 (4th Cir. 2011). . . . . . . . . . . . . . 7

## **STATUTES**

18 U.S.C. § 1028A(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18 U.S.C. § 3553(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## **GUIDELINES**

U.S.S.G. § 2B1.1 cmt. n.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

U.S.S.G. § 2B1.1 cmt. n.4(E). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## I.  Introduction

The district court committed procedural error in three respects in imposing Mr. Carver's sentence.  For the reasons argued below and in Mr. Carver's Opening Brief, these errors were clear and should be corrected.

## II.  Argument

*A.  Amount of Loss Incorrectly Calculated*

As more fully presented in his Opening Brief, the district court erred in its calculation of the amount of loss.  Citing *United States v. Carter*, 581 F. App'x 206 (4th Cir. 2014), the government contends this Court has "rejected" the "usability" standard relating to the definition of "access device" as adopted by the Ninth Circuit in *United States v. Onyesoh*, 674 F.3d 1157 (9th Cir. 2012).  *See* Appellee's Br. at 22. Yet this is not correct.  In *Carter*, this Court noted Carter argued for adoption of the *Onyesoh* "usability" standard, but that the government had "validated more than 800 credit card numbers used in the scheme," and Carter had "produced no evidence or argument that any of the valid numbers were not useable." 581 F. App'x at 208.  This is not a rejection of the standard; rather, it is merely an acknowledgment that Carter failed to meet his evidentiary burden at sentencing.

In Mr. Carver's case, the government did not produce *any* information that *any* of the numbers "encoded" or "re-encoded" onto the cards were validated or useable,

1

and Mr. Carver, through counsel, argued there were at least some of the numbers (although it is unclear at this point how many) that produced an "Error" code and would not have been useable. "The government does not need to prove that each access device found was successfully used to perpetrate a fraud but only that each *could have been used* to do so." *United States v. Jones*, 557 F. Supp. 2d 630, 638 (E.D. Pa. 2008) (emphasis added) "[U]nauthorized access devices are a subset of access devices and therefore must be capable of obtaining something of value." *Onyesoh*, 674 F.3d at 1159. That is, while the kind of devices covered is laid out in the statute, "the statute say nothing about the quantum of proof necessary to establish usability." *Id*.

In calculating the loss amount attributable to Mr. Carver, the district court necessarily relied on usability, as it accepted the number of cards attributable to Mr. Carver to be fifty-one (51), not sixty-four (64). Of the cards tested, one (1) was a hotel key, two (2) were not financial transaction cards, and two (2) cards belonged to Mr. Carver and his co-defendant. That leaves fifty-nine (59) access devices, not fifty-one (51). Therefore, to find fifty-one (51) cards attributable to Mr. Carver, the district court necessarily had to assess cards' usability and then subtract that number to reach the number it found attributable to Mr. Carver.

Assuming this Court does not adopt a "usability" requirement, the government

2

contends that it presented "extensive testimony" at sentencing to support the district court's finding of loss amount. Appellee Br. at 22. Yet Mr. Carver's opening brief provides specific evidence that the testimony on behalf of the government establishes—at most—only forty-five (45) cards should perhaps have been counted as qualifying "access devices" to calculate intended loss. That is, Detective Michael Dean (Dean) testified that of the sixty-four (64) cards tested, one (1) was a hotel key, two (2) were "not financial transaction cards," J.A. 103, nine (9) were "financial transaction cards found not be altered," J.A. 104, three (3) were found with "no information on them or they would not read," J.A. 104, and two (2) of the cards were issued to Mr. Carver or his co-defendant, J.A. 90. This total is forty-seven (47) cards, not fifty-one (51). Additionally, two of the cards were listed as having identifiable loss: one belonging to "Ms. [redacted]," (loss identified as $1,342.02), and one belonging to "Mr. [redacted]," (loss identified as $540 held "on [the] card at the hotel"). J.A. 188, ¶ 13 (Sealed). Therefore, these two cards should not have been included in any number multiplied by the $500 minimum, as this would be double-counting these cards in loss calculation.

The government offers no counter argument to these numbers. Accordingly, even assuming these forty-five (45) cards could be found to be unauthorized or counterfeit access devices, the amount of loss attributable to Mr. Carver should have

3

been only $24,382.02.[1]

### B. Number of Victims Incorrectly Determined

The government maintains Mr. Carver's counsel conceded at sentencing that the number of victims in this case is eighteen (18). *See* Appellee Br. at 23. This is not accurate. Counsel specifically indicated that he asked Dean "to identify the people and he has come up with names. So I [have] nothing more to say about that part. It is just a question of whether you want to accept that testimony as people who they identify with this particular incident from 2015." J.A. 122. Counsel later indicates that "[a]s far as the number of victims, [Dean] has identified I think 18, anyway, victims in connection with this case by name here in the courtroom." J.A. 123.

Dean may have identified eighteen (18) victims (a fact Mr. Carver disputes, as there is no indication in the record as to who were "three others that weren't added to" the fifteen (15) identified victims, J.A. 119). However, defense counsel specifically left to the district court the "question of whether you want to accept that testimony as people who they identify with this particular incident from 2015." J.A. 122. That is not a concession. It is simply an acknowledgment that it was the district

---

[1]Forty-five cards multiplied by $500 is equal to $22,500. Adding the actual loss of $1,342.02 and $540, the total becomes $24,382.02.

4

court's job to resolve disputed issues of fact.

The government cites *United States v. Anderson*, 532 F. App'x 373 (4th Cir. 2013), for the proposition that if an offense "involve[s] means of identification," the definition of "victim" located at U.S.S.G. § 2B1.1 cmt. n.1 expands to include "any individual whose means of identification was used unlawfully or without authority." U.S.S.G. § 2B1.1 cmt. n.4(E). This means—according to the government—the eighteen (18) victims found by the district court should be the correct number of victims.

The problem with the government's argument is that even though the Information to which Mr. Carver pleaded guilty was a violation of 18 U.S.C. § 1028A(a)(1), the Information charged that Mr. Carver "did knowingly *possess* without lawful authority" the means of identification of another person. See J.A. 59. The government's citation of *Alexander* is inapposite to Mr. Carver's case because there is no evidence Mr. Carver *used* the means of identification of the individual cited in the Information, only that he *possessed* the means of identification. Therefore, the expanded definition of "victim" listed in U.S.S.G. § 2B1.1 cmt. n.4(E) does not apply in Mr. Carver's case.

Accordingly, the number of victims for Mr. Carver's offense is—at most—two. For the reasons argued in Mr. Carver's opening brief, however, there is some question

5

whether there were any "victims" *at all* in this case, as there is a split in authority regarding who can be counted as a "victim" in these types of cases. *See United States v. Otuya*, 720 F.3d 183, 192 (4th Cir. 2013) (noting circuit split but deciding on alternate ground).[2]

The government failed to address this aspect of Mr. Carver's argument in its response brief. Therefore, Mr. Carver is entitled to relief on this issue, and his sentence should be vacated and remanded to the district court for resentencing.

*C. District Court Erred in Denying Acceptance of Responsibility*

The government contends that at sentencing, Mr. Carver's "attempts to challenge the amount of loss and number of victims reflect a frivolous and unfounded denial of relevant conduct which supports the denial of acceptance of responsibility reduction." Appellee Br. at 25. The government cites no legal authority for its position. Yet Mr. Carver has established that Circuit Courts disagree as to *both* of his objections: whether an access device must be "useable," and whether and when an individual qualifies as a "victim" in a fraud case. Asserting objections in this context cannot be a "frivolous and unfounded denial of relevant conduct." *See United States v. Burns*, 781 F.3d 688, 693 n.4 (4th Cir. 2015) ("A district court might well find that

---

[2]As noted in the PSR, there is "no actual restitution owed." J.A. 188 ¶ 14 (Sealed).

a defendant who admits to conduct underlying a cross reference, but disputes its legal significance, has nevertheless acted in a manner consistent with acceptance of responsibility.").

The government relies upon this Court's decision in *United States v. Savillion-Matute*, 636 F.3d 119 (4th Cir. 2011), to argue Mr. Carver should not be resentenced because "this is a case where a reading of the entire record along with the record of sentencing provides this court with a sufficient record for an effective review." Appellee's Br. at 26. But in *Savillion-Matute*, the district court provided a "consistent indication" that it would have reached the same result regardless of the procedural error committed. 636 F.3d at 124. *See also id*. (noting that district court "explained throughout sentencing that it 'absolutely' believed a 36-month sentence [was] appropriate."); *id*. (district court "explained its sentence in some detail," and that the district court "amply explained" the sentence).

Such is not the case here. The district court stated it would have imposed the same sentence "as an alternate variant sentence in light of all of the 18 U.S.C. Section 3553(a) factors and in light of the totality of the circumstances present in this case[.]" J.A. 154-155. However, if Mr. Carver's objections, as argued herein and in his opening brief, are found to be valid, the resulting guideline calculation, including

7

acceptance of responsibility, would be 6 to 12 months' imprisonment.[3] The sentence imposed, 33 months' imprisonment, is five times as high as the bottom end of that range, and almost three times as high as the top end of the range. There is nothing in the district court's reasons for the imposition of an alternate variant sentence that "can help [this Court] identify when an erroneous Guidelines calculation had no effect on the final sentencing determination." *United States v. Gomez-Jimenez*, 750 F.3d 370, 391 (4th Cir. 2014), as corrected (Apr. 29, 2014) (Gregory, J., dissenting). *See also United States v. Diaz–Ibarra*, 522 F.3d 343, 347 (4th Cir. 2008) ("An error in the calculation of the applicable Guidelines range, whether an error of fact or of law, infects all that follows at the sentencing proceeding . . . .").

---

[3]This is based on a base offense level 6 plus a two-level enhancement for possession of device-making equipment, resulting in an offense level 8. Subtracting two levels for acceptance of responsibility, the offense level would be 6. With a criminal history IV, this produces an imprisonment range of 6 to 12 months.

### III. Conclusion

For the reasons argued above and in Mr. Carver's Opening Brief, he is entitle to relief. His sentence should be vacated and this matter remanded to the district court for resentencing.

Respectfully submitted,

*s/ Emily Deck Harrill*
Assistant Federal Public Defender
Federal Public Defender's Office
1901 Assembly Street, Suite 200
Columbia, South Carolina  29201
Telephone: (803) 765-5079
**ATTORNEY FOR APPELLANT
APPEAL NO.  18-4152**

Columbia, South Carolina
August 30, 2018

9

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**
Effective 12/01/2016

No. _____   Caption: _____

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[ ] this brief or other document contains _____ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[ ] this brief or other document has been prepared in a proportionally spaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s)_____

Party Name_____

Dated:_____

# CERTIFICATE OF SERVICE

I, EMILY DECK HARRILL, Assistant Federal Public Defender, certify that I have this date **electronically filed** the **REPLY BRIEF FOR APPELLANT** with the Fourth Circuit Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF user(s):

> **Ms. E. Jeanne Howard, Esq.**
> **Assistant United States Attorney**
> **55 Beattie Place**
> **Suite 700**
> **Greenville, South Carolina 29601**

I further certify that I have mailed the **REPLY BRIEF FOR APPELLANT** by First-Class Mail, postage-prepaid, to the following non-CM/ECF participant(s), addressed as follows:

> **LEGAL MAIL**
> **DO NOT OPEN EXCEPT IN PRESENCE OF ADDRESSEE**
> **Keith Wayne Carver, Jr., #31268-171**
> **FMC Lexington**
> **Federal Medical Center**
> **P.O. Box 14500**
> **Lexington, KY 40512**

>                          s/EMILY DECK HARRILL
>                          Assistant Federal Public Defender
>                          Federal Public Defender's Office
>                          1901 Assembly Street, Suite 200
>                          Columbia, SC  29201
>                          Telephone: (803) 765-5079
>                          **ATTORNEY FOR APPELLANT**
>                          **APPEAL NUMBER: 18-4153**

Columbia, South Carolina
August 30, 2018